```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------x
```
ANTHONY CIPOLLONE; and
DOMENICK CIPOLLONE,

    Movants,

 -against-

VIRGINIA TRUE CORPORATION; and
DIATOMITE CORPORATION OF
AMERICA,

    Respondents.

**MEMORANDUM AND ORDER**

Case No. 1:20-cv-972-FB

*Appearances:*
*For the Movants*:
STEPHEN ZOLTAN STARR
Starr & Starr, PLLC
260 Madison Ave.
17th Floor
New York, NY 10016

*For the Respondents*:
DOUGLAS J. PICK
Pick & Zabicki, LLP
369 Lexington Ave
12th Floor
New York, NY 10017
\*\*\*\*
Rishi Kapoor
Venable LLP
1270 Ave. of the Americas
24th Floor
New York, NY 10017

**BLOCK, Senior District Judge:**

  Movants-Claimants Anthony and Domenick Cipollone ("the Cipollones") are former shareholders and directors of Respondent-Debtor Virginia True Corporation ("Virginia True" or "the Corporation"), an insolvent real estate

1

development corporation.[1] The Cipollones invested $5,000,000.00 in Virginia True in exchange for a 32% equity interest, two seats on the company's board and the right to convert their ownership interest to a secured debt within 18 months of their investment.

In 2018, the Cipollones concluded that they would not recover their investment and attempted to exercise their option to convert their equity to secured debt. To this end, they filed suit against Virginia True in Virginia state court and obtained a promissory note for $5,000,000 plus interest, which was secured by a first priority lien on the Property. *See* ECF No. 1, Ex. 2 at 34–6. *See also* Bankr. ECF No. 35, Ex. 6–7.[2] Virginia True made no payments on the note, which matured in April of 2019. Instead, it declared bankruptcy, and the Cipollones submitted proofs of claim, asserting that the $5,000,000 debt owed them should take priority in the distribution of Virginia True's assets. ECF No. 1,

---

[1] Virginia True was formed to develop a parcel of land in Richmond County, Virginia, ("the Property") into a residential, commercial and entertainment space. The Property is its only asset.

[2] "Bankr. ECF No." refers to the docket entries in Virginia True's adversary proceeding against the Cipollones in the United States Bankruptcy Court for the Eastern District of New York: *Virginia True Corp. v. Anthony Cipollone and Domenick Cipollone*, No. 1-19-01118-nhl (Bankr. E.D.N.Y. Sept. 4, 2019). Virginia True is also involved in a voluntary Chapter 11 Bankruptcy, which is docketed in the same bankruptcy court as *In re. Virginia True Corp.*, No. 1-19-42769-nhl (Bankr. E.D.N.Y. May 3, 2019). Citations to that case will not be abbreviated.

Ex. 2 at 76–87. *See also In re. Virginia True Corp.*, No. 1-19-42769-nhl (Bankr. E.D.N.Y. May 3, 2019).

In response, Virginia True instituted an adversary proceeding against the Cipollones in the bankruptcy court, in which Respondent Diatomite Corporation of America ("Diatomite") intervened.[3] *See Virginia True Corporation. v. Anthony Cipollone and Domenick Cipollone*, No. 1-19-01118-nhl (Bankr. E.D.N.Y. Sept. 4, 2019). The Corporation argues that, under Virginia and federal law, (1) it may avoid its obligation to pay the Cipollones' secured debt, since that debt was created by a fraudulent transfer; (2) the Cipollones' secured debt must be reverted to an equity interest in the company; (3) that interest must be subordinated to the interest of outside creditors, including Diatomite; and (4) the Cipollones' lien on the Property must be voided and the documents securing it returned to Virginia True's estate. It further argues that the Virginia Stock Corporation Act entitles it to damages from the Cipollones.

The Cipollones have moved to dismiss Virginia True's complaint and seek a jury trial on any counts that survive dismissal. They ask this Court to "withdraw the reference" to the bankruptcy court and conduct all further proceedings, including those related to their motion to dismiss. In the alternative, they ask the

---

[3] Diatomite is Virginia True's largest external creditor and the Property's original owner. Virginia True owes approximately $ 7,000,000 to Diatomite.

3

Court to abstain from hearing the case and allow it to be decided in the Virginia state courts.[4] Their requests to withdraw the reference and for abstention are denied.

I.

A.     **Mandatory Withdrawal**

A "district court may withdraw. . . any case or proceeding referred to the bankruptcy court on its own motion or on a timely motion of any party, for cause shown." *In re. Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) (quoting 28 U.S.C. § 157(d)). Withdrawal may be either mandatory or permissive. 28 U.S.C. § 157(d). Withdrawal is mandatory "if the court determines that resolution of the proceeding requires [substantial] consideration of both [Title] 11 and other laws of the United States regulating organizations or . . . interstate commerce." *Nisselson v. Salim*, No. 12 Civ. 92 (PGG), 2013 WL 1245548, at *2 (S.D.N.Y. Mar. 25, 2013); *see also In re. Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990) (limiting mandatory withdrawal to cases requiring "substantial and material consideration of non-Bankruptcy Code federal statutes").

B.     **Permissive Withdrawal**

---

[4] The Cipollones also request a stay of the underlying adversary proceeding pending the Court's adjudication of the instant motion to withdraw the reference. *See* ECF No. 10. Their request is denied as moot.

4

By contrast, the Court has "broad discretion" to decide whether permissive withdrawal is warranted. *Nisselson*, 2013 WL 1245548, at *3 (citing *Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec., LLC*, No. 12 Civ. 9408(VM), 486 B.R. 579, 584 (S.D.N.Y. 2013)). When exercising this discretion, the Court's "first inquiry is whether the bankruptcy court has final adjudicative authority over the claim[s]" at issue. *Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Intern. Ltd.*, 905 F. Supp. 2d 526, 530 (S.D.N.Y. 2012); *see also Stern v. Marshall*, 564 U.S. 462, 462 (2011) (setting limits of bankruptcy court adjudicative authority). After this inquiry, the Court may consider a range of other factors (the "*Stern-Orion*" factors), including (1) judicial economy, (2) uniform bankruptcy administration, (3) reducing forum shopping, (4) economical use of debtor and creditor resources, (5) expediting the bankruptcy process, and (6) the presence (or absence) of a jury demand. *Orion*, 4 F.3d at 1101.

The Court may deny a motion to withdraw the reference based on these factors even if it determines that the bankruptcy court lacks final adjudicative authority. *Id.* at 1101–02 ("a district court might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that [a] jury demand is without merit and therefore might conclude that the case is. . .best left in the bankruptcy court" until it is trial ready); *see also Nisselson*, 2013 WL 1245548, at **5–6 (denying motion to withdraw the reference in case

5

where "the bankruptcy court lacks constitutional authority to enter final judgment").

A bankruptcy court that lacks "final adjudicatory authority" may nonetheless preside over pretrial proceedings. *Orion*, 4 F.3d at 1101–02; *see also In re. Enron Corp.*, No. 03 Civ. 5078(DLC), 2003 WL 22171695, at *3 (S.D.N.Y. Sept. 22, 2003). If a bankruptcy court enters a final order without authority to do so, that order is instead "treat[ed]. . . as proposed findings of fact and conclusions of law." Admin. Order of Dec. 5, 2012, *In the Matter of the Referral of Matters to the Bankruptcy Judges* (available at https://img.nyed.uscourts.gov/files/general-ordes/Order12052012.pdf).

The moving party bears the burden of demonstrating that permissive withdrawal of the reference is warranted. *Nisselson*, 2013 WL 1245548, at *3.

**C.    Abstention**

Like withdrawal, abstention may be mandatory or permissive. Abstention is mandatory "upon timely motion of a party in a proceeding based upon a State law claim. . .related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a [federal] court. . . absent jurisdiction under [28 U.S.C. § 1334]." 28 U.S.C. § 1334(c)(2). Additionally, the proceeding at issue must have been pending in state court prior to the bankruptcy filing. *See In re. Intl. Tobacco*

*Partners, Ltd.*, 462 B.R. 378, 390 (Bankr. E.D.N.Y. 2011). In cases where abstention is not mandatory, the court may nonetheless decline to hear a case "in the interest of justice, or in the interest of comity with State courts or respect for state law." 28 U.S.C. § 1334(c)(1).

Permissive abstention "is an exception to the court's general obligation to exercise conferred jurisdiction" and should be granted sparingly. *In re. Strathmore Grp., LLC*, 522 B.R. 447, 457–58 (Bankr. E.D.N.Y. 2014). The Court considers twelve factors when deciding whether to abstain, which pertain to judicial economy, the difficulty and/or novelty of the state law issues, and the nature and extent of the relationship between the state law and bankruptcy issues. *See Osuji v. Fed. Nat'l Mortg. Ass'n*, 571 B.R. 518, 521 (E.D.N.Y. 2017) (listing factors). The party seeking abstention must show that it is warranted. *Strathmore*, 522 B.R. at 458.

## II.

There is no serious basis for mandatory withdrawal in this case. Although this case involves some Virginia state laws, the Cipollones have pointed to no "non-Bankruptcy Code *federal* statutes [which are] necessary for resolution of" the underlying adversary proceeding. *Cf.. Ionosphere Clubs, Inc.*, 922 F.2d at 995 (emphasis added). *See also* ECF No. 1, Ex. 2 at 37–47 (listing causes of action under Virginia law and the United States Bankruptcy Code). Thus, the only issue is

whether the Court should exercise its discretion to remove this case from the bankruptcy court.

The Cipollones argue that permissive withdrawal is warranted because (1) "they have demanded a jury trial;" (2) they do not consent to jury trial in the bankruptcy court; (3) their proofs of claim "expressly reserve their right" to challenge the bankruptcy judge's jurisdiction or seek trial in the district court. ECF No. 1, Ex. 2 at 14–15. They further argue that the *Orion* factors favor withdrawal because the bankruptcy court cannot enter final judgment on Virginia True's state law claims, and it would be inefficient to adjudicate the complaint piecemeal. ECF No. 1, Ex. 2 at 16.

A. **The Cipollones' Jury Demand and Reservation of Rights Do Not Justify Withdrawal**

Regardless of whether the Cipollones have a right to a jury trial or have requested one, the fact remains that this case is not "trial ready." *See Orion*, 4 F.3d at 1101–02. On the contrary, discovery has not even begun, and the motion to dismiss pending in the bankruptcy court has the potential to eliminate some or all of the state law claims on which the Cipollones are otherwise entitled to a jury trial.[5] *See* Bankr. ECF No. 30 (arguing that state law counts fail to state a claim).

---

[5] Diatomite argues that the Cipollones waived their jury trial right, while both the Cipollones and Virginia True reject this position. *Compare* ECF No. 4 at 15 (arguing, in Diatomite's brief, that "[by] filing proofs of claim, the Cipollones have waived their jury trial right") *with* ECF No.1 , Ex. 2 at 14 (asserting right to a jury

8

Thus, at this early stage in the adversarial litigation, the Court has no reason to believe a jury trial is likely. *See Orion*, 4 F.3d at 1101–02 (noting that the Court may leave case in bankruptcy court if it is "unlikely to reach trial"). *See also* Office of the United States Courts, *Federal Judicial Caseload Statistics*, Table C-4—U.S. Dist. Courts Civil Cases Terminated, available at https://www.uscourts.gov/statistics/table/c-4/federal-judicial-caseload-statistics/2020/03/31 (showing that 0.7% of all civil actions reached trial in fiscal year 2020). The Cipollones' *potential* entitlement to a jury trial in several months' time does not justify removing this case from the bankruptcy court today, especially where, as here, the bankruptcy court has already overseen a number of matters related to the bankrupt estate and acquired what one court describes as a "wealth of knowledge" about its affairs. *See In re. Virginia True Corp.*, No. 1-19-42769-nhl (Bankr. E.D.N.Y. May 3, 2019) (underlying, non-adversarial

---

trial) *and* ECF No. 3 at 6 (noting that "Virginia True does not dispute that the Cipollones are entitled to a jury trial on the state law claims"). Because the Court would not yet withdraw the reference even if the Cipollones are entitled to a jury trial, the Court believes any opinion it might render on the Cipollones' alleged waiver would constitute an unsolicited declaratory judgment with unintended "preclusive effects" on arguments the Cipollones might make before the bankruptcy court. *See Orion*, 4 F.3d at 1100 (holding that an order on a motion to withdraw the reference is reviewable if it "merges" into a declaratory judgment with "preclusive effect on [an] Adversary Proceeding"). It declines to enter such a judgment. *See Dow Jones, Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (noting that the Court has "discretion to determine *whether* it will exert jurisdiction over a proposed declaratory judgment action") (emphasis added).

bankruptcy proceeding pending since 2019); *see also Adelphia Recovery Trust v. FLP Grp., Inc.*, 2012 WL 264180, at *7 (S.D.N.Y. Jan. 30, 2012).

Because the Cipollones' claim of entitlement to a jury trial does not justify withdrawal of the reference, their reservation of that right necessarily fails to secure the same result.

**B.** **The *Stern-Orion* Factors Weigh Against Withdrawal**

The Cipollones next argue that the *Stern-Orion* factors support withdrawal because the bankruptcy court lacks jurisdiction to finally adjudicate counts 5, 6, 7 and 8 of Virginia True's complaint, which implicate Virginia law. The fifth and sixth counts allege that the Cipollones obtained their $5,000,000.00 secured interest as the result of a fraudulent transfer, while the seventh and eighth counts assert that the interest was given in violation of the Virginia Stock Corporation Act. *See* ECF No. 42–6. *See also* Va Code Ann. § 13.1-653 *et seq.* Notably, only the eighth claim arises *solely* under Virginia law: the others proceed under both Virginia law and various provisions of the federal Bankruptcy Code.

Diatomite responds that the Cipollones consented to the bankruptcy court's jurisdiction when they filed proofs of claim in the bankruptcy court, and that bankruptcy courts may adjudicate "non-core" claims that must be "resolved [when]

ruling on a creditor's proof of claim."[6] ECF No. 4 at 13 (quoting *Kramer v. Mahia*, 2013 WL 1629254, at *4 (E.D.N.Y. Apr. 15, 2013)); *see also Stern*, 564 U.S, at 497–98. It further argues that all but one of the Cipollones' state law claims request "avoidance, equitable subordination and recharacterization," which are remedies routinely awarded in bankruptcy court. *See* ECF No. 4 at 14 (collecting cases).

1. **Finality**

The Court agrees with Diatomite that the bankruptcy court has final adjudicative authority over the avoidance and fraudulent transfer claims in Counts 5, 6 and 7 of Virginia True's complaint. As evidenced by the Cipollones' decision to plead all three claims under the Bankruptcy Code as well as state law, these claims are factually and legally intertwined with the adjudication of the Cipollones' proofs of claim before the bankruptcy court. *See* ECF No. 42–6. *See also In re. Bernard L. Madoff Inv. Sec., Inc.*, 740 F.3d 81, 94–5 (2d Cir. 2014) (holding that a plaintiff's "disguised fraudulent transfer claims" were subject to the bankruptcy court's jurisdiction because "a preferential transfer claim can be heard in bankruptcy when the allegedly favored creditor has filed a claim [in the bankruptcy court]") (quoting *Stern*, 564 U.S. at 497); *Sec. Inv. Protec. Corp. v.*

---

[6] As explained above (*See* n.5), Virginia True does not appear to join in this argument, though it has not stated its opposition to Diatomite's position.

*Bernard L. Madoff Inv. Sec., LLC*, No. 08-01789(SMB), 597 B.R. 466, 476 (Bankr. S.D.N.Y. 2019) ("Avoidance claims always implicate the claims allowance process"); *In re: FKF 3, LLC*, No. 13-CV-3601 (KMK), 2016 WL 4540842, at *15 (S.D.N.Y. Aug. 30, 2016) (noting that the "filing of a proof of claim transforms [an] otherwise common-law recharacterization into an equitable claim [subject to bankruptcy court jurisdiction] because [the recharacterization issue] will necessarily be resolved in the claims-allowance process"). Indeed, even without all of this caselaw, it is apparent that any resolution of Virginia True's state law claims "implicate the claims allowance process," since the practical effect of the relief Virginia True seeks would be to deprive the Cipollones of their "first priority" place in the hierarchy of creditors and force them to press their claim as ordinary stockholders. *See* ECF No. 1, Ex. 2 at 47–48.

By contrast, the bankruptcy court may lack authority to enter a final judgment on Count 8 of Virginia True's complaint. Unlike the Counts discussed above, Count 8 arises under Virginia law and was pled without any reference to the Bankruptcy Code. *See* ECF No. 1, Ex. 2 at 45. More importantly, Count 8 seeks to hold the Cipollones *personally* liable "to the corporation and its creditors for the amount of the [allegedly unlawful] distribution that exceeds what could have been distributed without violating the Act." *Id.* (quoting Va Code Ann. § 13.1-692). Consequently, unlike the other state law counts, a finding of liability on Count 8

would not simply result in the alteration or reordering claims against the bankrupt estate but could instead lead to entry of a monetary judgment against the Cipollones that would enlarge the estate. While the likelihood of this actually occurring is small,[7] its mere possibility is enough to make Count 8 less like a dispute over creditor preferences and more like the tortious interference claim deemed beyond the scope of bankruptcy court authority in *Stern*. *See* 564 U.S. at 462 (holding that the bankruptcy court lacked constitutional authority to adjudicate tortious interference claim that was not necessarily decided when evaluating the parties' proofs of claim).

For the foregoing reasons—and out of an abundance of caution—the Court concludes that the bankruptcy court should not enter final judgment on Count 8 of Virginia True's complaint. If the bankruptcy court believes pretrial final judgment is appropriate on Count 8, it should instead prepare findings of fact and conclusion of law, which the Court will review *de novo*. *See* Admin. Order of Dec. 5, 2012, *In the Matter of the Referral of Matters to the Bankruptcy Judges* (available at

---

[7] Notably, the claim at issue in Count 8 would only enlarge the estate if the bankruptcy court finds that Virginia True's assignment of a secured interest to the Cipollones was lawful (such that the other claims in Virginia True's complaint are without merit), but also that the value of that interest "exceeds what could have been distributed." Va Code Ann. § 13.1-692. In such a situation, the Cipollones might still be able to obtain priority creditor status for their note, but Virginia True would have a claim against them under Va Code Ann. § 13.1-692 to recover the difference between the amount it paid, and the amount the Cipollones could have obtained "without violating [Virginia law] or the articles of incorporation." *Id.*

13

https://img.nyed.uscourts.gov/files/general-ordes/Order12052012.pdf).[8] However, the bankruptcy court's inability to enter final judgment on one of nine counts is not "good cause" for removal, so the first *Stern-Orion* factor weighs against withdrawal.

**2.     Other *Stern-Orion* Factors**

The remaining *Stern-Orion* factors either support denying the motion or are neutral. Factors 1 ("judicial economy"), 2 ("uniform administration of bankruptcy law") and 5 ("expediting the bankruptcy process") all support allowing the case to proceed under the guidance of a specialized bankruptcy judge rather than beginning the adversary proceeding again in district court. *See FLP Grp., Inc.*, 2012 WL 264180, at *7 (case best left in bankruptcy court in light of the bankruptcy judge's "wealth of knowledge" and experience). Moreover, the Cipollones' simultaneous attempts to remove their state claims to this Court *and* persuade this Court to abstain from hearing it altogether raise a slight inference of forum-shopping or at least aversion to the federal courts. Thus, Factor 3 weighs lightly in favor of denial.

By contrast, Factor 6 ("presence of jury a jury demand") favors granting the motion, but the Court affords it little weight in light of the analysis in Part II.A of

---

[8] Denials of pretrial dispositive motions are nonfinal orders that need not be submitted as proposed findings.

this Order. The parties have not briefed Factor 4 ("expenditure of debtor-creditor resources"), so the Court deems it neutral.

For the foregoing reasons, the Cipollones have failed to show that withdrawal is warranted.

## III.

In the alternative, the Cipollones ask the Court to abstain from hearing the case in its entirety. There is, however, no basis for mandatory abstention because the Cipollones do not identify a parallel state court proceeding. *See Intl. Tobacco Partners Ltd.*, 462 B.R at 390.

The Cipollones' request for permissive abstention is also meritless. In a single sentence, they argue that the existence of claims based on state law and their claim of entitlement to a jury trial mean that abstention is warranted. ECF No. 1, Ex. 2 at 20. Were the Court to accept this cursory argument, virtually every adversary proceeding would be a viable candidate for abstention, and the "exception to the Court's general obligation to exercise conferred jurisdiction" would swallow the rule. *Strathmore Grp., LLC*, 522 B.R. at 457.

## CONCLUSION

The Cipollones' motion to withdraw the reference and for abstention is **DENIED.** Their request for a pre-motion conference to discuss a stay is further **DENIED AS MOOT**.

15

The Clerk of Court is **DIRECTED** to return this adversarial proceeding to the bankruptcy court, where the bankruptcy judge may conduct all proceedings until the case is ready for trial. The bankruptcy judge is, however, **ADVISED** that she should not enter final judgment on Count 8 of the Cipollones' complaint. If she determines that final judgment is appropriate on that claim, she should submit Proposed Findings of Fact and Conclusions of Law to the Court, which shall be treated as a Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

The bankruptcy court may dismiss or enter final summary judgment on any of the Cipollones' other claims.

**SO ORDERED.**

                                                 /S/ Frederic Block
                                                 FREDERIC BLOCK
                                                 Senior United States District Judge

Brooklyn, New York
May 25, 2021